# EXHIBIT A

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

Channel Methods Partners, LLC,
a New Jersey limited liability company

                             Plaintiff,

v.

Pharmatech, Inc.,
a Colorado corporation

                             Defendant.

Civil Action No. 3:14-CV-05358

**BRIEF IN SUPPORT OF
MOTION TO DISMISS OR IN
THE ALTERNATIVE FOR A
MORE DEFINITE
STATEMENT AND TO
TRANSFER VENUE**

Maritza Dominguez Braswell
NJ Attorney ID: 016222008
Jones & Keller, P.C.
1999 Broadway, Suite 3150
Denver, CO 80202
Telephone: (303) 573-1600
Facsimile: (303) 573-8133
mbraswell@joneskeller.com

Attorney for Defendant Pharmatech, Inc.

## TABLE OF CONTENTS

**PAGE**

**INTRODUCTION**…………………………………………………..…...1

**BACKGROUND**...…………………………………………………………… 3

       Facts Pertaining to Personal Jurisdiction and Venue…………………...3

       The Governing Contract and its Limitation of the Plaintiff's Action…..3

**LEGAL STANDARD**

       Personal Jurisdiction…………………………………………………**.5**

       Failure to State a Claim…………………………………………………**5**

       Venue……………………………………………………………………**6**

**CHOICE OF LAW**……………………………………………………………**7**

**ARGUMENT**………………………………………………………….…**8**

    I.      The Complaint Should Be Dismissed Because Pharmatech
           Lacks Minimum Contacts Sufficient to Establish Personal
           Jurisdiction in New Jersey ………………………..………..………**8**

           A. Specific Jurisdiction Over Pharmatech is Lacking………......**9**

           B.  General Jurisdiction Over Pharmatech is Lacking.................**13**

    II.     If the Court Does Not Dismiss the Entire Complaint for
           Lack of Personal Jurisdiction, It Should Dismiss Plaintiff's
           Tort Claims For Failure to State a Claim, and As
           Barred By the Economic Loss Rule……………………………**14**

           A. The Court Should Dismiss Plaintiff's Third Count for
              Tortious Interference of Contract……….……………….…**15**

           B. The Court Should Dismiss Plaintiff's Fourth Count for

   "Tortious Interference of Prospective
   Economic Advantage".......................................**18**

III. Plaintiff's Second, Fifth, and Sixth Claims are Duplicative
  and Should Be Dismissed For Failure to State a Claim
  Upon Which Relief Can Be Granted.............................**23**


  A. The Court Should Dismiss Plaintiff's Second Count for
   "Bad Faith Dealing" Because it is Duplicative of Plaintiff's
   Third Count for Tortious Interference of Contract,
   Fails to State a Claim, and  is based on the Express
   Terms of the Contract........................................**23**

  B. The Court Should Dismiss Plaintiff's Fifth Count
   for "Unjust Enrichment Because an Express Contract
   Covers the Subject Matter of this Dispute....................**25**

  C. The Court Should Dismiss Plaintiff's Sixth Count
   for "Account Stated" Because it Fails to State a Claim
   and is Duplicative..........................................**26**

IV. Pursuant to the Liability Clause in the Contract, the Court
  Should Dismiss Plaintiff's Request for All Compensatory
  and Punitive Damages As Well As Any Costs and Fees
  and Other Special Damages....................................**27**

V. Plaintiff Fails to Plead its Apparent Misappropriation Claim with
  Sufficient Particularity and The Court Should Require That
  Plaintiff Provide a More Definite Statement..................**27**

VI. This Case Should be Transferred to the District of
  Colorado Pursuant to the Contract's Forum Selection
  Clause and 28 U.S.C. § 1404(a)...............................**32**


**CONCLUSION**..........................................................**33**

# TABLE OF AUTHORITIES

## Cases

*Analog Devices, Inc. v. Michalski,*
    579 S.E.2d 449, 453 (N.C. App. 2003) .................................................................30

*Atl. Marine Const. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Texas,*
    134 S. Ct. 568, 579 (2013) ...............................................................................6,7

*Baker v. Carpenter,*
    33 516 P.2d 459, 461 (Colo. App. 1973) ...........................................................16

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544, 555 (2007) ....................................................................................5

*Builder MT LLC v. Zybertech Const. Software Servs., LTD,*
    Civ. A. No. 08-cv-00435, 2008 WL 4724146, at *3 (D. Colo. Oct. 24, 2008) ...24

*Burger King Corp. v. Rudzewicz,*
    471 U.S. 462, 475, 476, 477, 482 (1985) .................................................... 11, 12

*Campmor, Inc. v. Brulant, LLC,*
    Civ. No. 09-5465, 2010 WL 1381000, at *2 (D.N.J. Apr. 1, 2010) .....................8

*Centerpoint Grp. LLC v. Perot Sys. Inc.,*
    Civ. A. No. 10-806, 2010 WL 2522080, at *3 (D.N.J. June 15, 2010) ..............27

*Cmty. Fin. Grp., Inc. v. Stanbic Bank Ltd.,*
    Civ. A. No. 12-3851, 2013 WL 3223371, at *2 (D.N.J. June 25, 2013) ..............9

*Coldwell Banker Real Estate, LLC v. Plummer & Associates, Inc.,*
    Civ. A. No. 09-1313, 2009 WL 3230840, at *3 (D.N.J. Oct. 2, 2009)...............24

*Consol. Brick & Bldg. Supplies, Inc. v. Alosi Const., Inc.,*
    Civ. A. No. 05-1490, 2006 WL 2135805, at *7 (D.N.J. July 28, 2006).............26

*Conyers v. Lee,*
    511 P.2d 506, 507 (Colo. App. 1973) ................................................................26

*Craig v. Siemens Energy, Inc.*,
   2011 WL 3240458, *2 (W.D.La. Jun. 22, 2011)..................................................14

*Cronk v. Intermountain Rural Elec. Ass'n*,
   765 P.2d 619, 623 (Colo. App. 1988) ................................................18

*Crow v. Penrose-St. Francis Healthcare Sys.*,
   262 P.3d 991, 997 (Colo. App. 2011) ................................................33

*DBA Distribution Servs., Inc. v. All Source Freight Solutions, Inc.*,
   Civ. A. No. 11-390, 2012 WL 845929, at *5 (D.N.J. Mar. 13, 2012) ................25

*Del Monte Fresh Produce Co. v. Dole Food Co.*,
   148 F. Supp. 2d 1322, 1325 (S.D. Fl. 2001) ......................................30

*D'Elia v. Grand Caribbean Co.*,
   Civ. A. No. 09-1707, 2011 WL 6153704, at *6 (D.N.J. Dec. 12, 2011) ............11

*DeRubeis v. Whitten Tech., Inc.*,
   244 F.R.D. 676, 681 (N.D. Ga. 2007) ................................................29

*Faber v. Townsend Farms, Inc.*,
   Civ. A. No. 13-cv-02423, 2014 WL 2892249, at *4 (D. Colo. June 26, 2014).....9

*Fenimore v. Stauder*,
   527 P.2d 943, 945 (Colo. App. 1974) ................................................33

*Figueroa v. City of Camden*,
   580 F. Supp. 2d 390, 396-97 (D.N.J. 2008) ......................................5,6

*FMC Corp. v. Cyprus Foote Mineral Co.*,
   899 F. Supp. 1477, 1481 (W.D.N.C. 1995)........................................29

*Foxtons, Inc., v. Cirri Germain Realty*,
   2008 WL 465653 at *7 (N.J. Super. Ct. App. Div. App. Feb. 22, 2008..........15

*Gloston v. ITT Fed. Servs. Int'l Corp.*,
   Civ. A. No. 06-cv-02168, 2007 WL 1830486, at *3 (D. Colo. June 21, 2007)...24

*Gognat v. Ellsworth*,
   224 P.3d 1039, 1054-55 (Colo. App. 2009), *aff'd*, 259 P.3d 497 (Colo. 2011) ...33

*Goodyear Dunlop Tires Op., S.A. v. Brown*,
   131 S.Ct. 2846, 2851 (2011) .................................................................................9

*Horizon Grp. Of New England, Inc. v. N.J. Schools Constr. Corp.*,
   2011 WL 3687451, at *5 (N.J. Super. App. Div. Aug. 24, 2011) .......................17

*Imax Corp. v. Cinema Techs., Inc.*,
   152 F.3d 1161, 1164-65 (9th Cir. 1998).............................................................29

*IMO Indus., Inc. v. Kiekert AG*,
   155 F.3d 254, 257 (3d Cir. 1998) ............................................................. 5, 8, 9

*In re Frontier Airlines, Inc.*,
   88 B.R. 332, 335 (Bankr. D. Colo. 1988).............................................................8

*Ingeniador, LLC v. Interwoven*,
   874 F.Supp.2d 56, 62 (D. Puerto Rico 2012) .....................................................14

*Instructional Systems, Inc. v. Computer Curriculum Corp.*,
   130 N.J. 324, 341-42, 614 A.2d 124, 133 (N.J. 1992) .........................................7

*International Shoe Co. v. Washington*,
   326 U.S. 310, 320 (1945) ...................................................................................12

*JDB Med., Inc. v. The Sorin Grp., S.p.A.*,
   Civ. Action Nos. 07-cv-00350, 07-cv-00591, 2008 WL 10580039, at *5
   (D. Colo. June 11, 2008) .............................................................................. 17, 22

*Jones v. Lehmkuhl*,
   Civ. A. No. 11-cv-02384, 2013 WL 6728951, at *14
   (D. Colo. Dec. 20, 2013) .............................................................................. 23, 34

*Kehm Oil Co.*,
   537 F.3d at 300 (3d Cir. 2008) ......................................................................9, 13

*Knights Armament Co. v. Optical Sys. Tech., Inc.*,

254 F.R.D. 463, 468 (M.D.Fla. 2008) ................................................................29

*Kopp, Inc. v. United Technologies, Inc.*,
    223, N.J. Super. 548, 559, 539 A.2d 309, 315 (N.J. Super. Ct. App. Div. 1988) 18

*Krystkowiak v. W.O. Brisben Companies, Inc.*,
    90 P.3d 859, 871 (Colo. 2004) ....................................................................15

*Levenger Co. v. Feldman*,
    516 F. Supp. 2d 1272, 1287 (S.D. Fl. 2007) ..........................................................30

*Lucey v. FedEx Ground Package Systems, Inc.*,
    No. 07-4372, 2009 WL 51644, at *1 n. 3 (3d Cir. Jan. 8, 2009) ...........................7

*Manley Toys, Ltd. v. Toys R Us, Inc.*,
    Civ. No. 12-3072, 2013 WL 244737, at *5 (D.N.J. Jan. 22, 2013) ....................26

*McAlpine v. AAMCO Automatic Transmissions, Inc.*,
    461 F. Supp. 1232, 1273 (E.D. Mich. 1978) ..........................................................25

*Mellon Bank (East) PSFS, N.A. v. DiVeronica Bros., Inc.*,
    983 F.2d 551, 556 (3d Cir.1993) ....................................................................10

*Morse v. Lower Merion Sch. Dist.*,
132 F.3d 902, 906 (3d Cir. 1997) ........................................................................6

*Occusafe, Inc. v. EG&G Rocky Flats, Inc.*,
    54 F.3d 618, 622 (10th Cir. 1995) ........................................................ 18, 19, 20

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*,
    998 F.2d 1192, 1196 (3d Cir.1993) ....................................................................6

*Pfundstein v. Omnicom Group Inc.*,
    285 N.J. Super. 245, 251-52, 666 A.2d 1013, 1016 (1995) .................................10

*Phillips v. County of Allegheny*,
    515 F.3d 224, 231 (3d Cir. 2008) ....................................................................6

*Porous Media Co. v. Midland Brake, Inc.*,
    187 F.R.D. 598, 600 (D. Minn. 1999) ................................................................29

*Roberts v. Velez*,
   Civ. A. No. 11-1198, 2011 WL 2745939, at *5 (D.N.J. July 12, 2011) .............23

*Robeson Industries Corp. v. Hartford Acc. & Indem. Co.*,
   178 F.3d 160, 165 (3d Cir. 1999) .........................................................7

*Saturn Sys. Inc. v. Militare*,
   252 P.3d 516, 522 (Colo. App. 2011) ...................................................29

*Sutra, Inc. v. Iceland Express, EHF*,
   Civ. A. No. 04-11360, 2008 WL 2705580, at *3 (D. Mass July 10, 2008) .........29

*Sweeney v. Marvin Windows, Inc.*,
   Civ. A. No. 10-cv-00457, 2010 WL 4256195 (D. Colo. Oct. 20, 2010) .............22

*Town of Alma v. Azco Constr., Inc.*,
   10 P.3d 1256, 1262-64 (Colo. 2000) ........................................... 16, 17

*U.S. v. Gladish*,
   536 F.3d 646, 648-49 (7th Cir. 2008) ..................................................25

*Van Rees v. Unleaded Software, Inc.*,
   No. 12CA1014, 2013 WL 6354532, at * 2-4 (Colo. App. Dec. 5, 2013) ............16

*World-Wide Volkswagen Corp. v. Woodson*,
   444 U.S. 286, 292 (1980) ..................................................................12

*Yadon v. Lowry*,
   126 P.3d 332, 335-36 (Colo. App. 2005) ...............................................6

*Zibiz Corp. v. FCN Technology Solutions*,
   777 F.Supp.2d 408, 419 (E.D.N.Y. 2011)……………………………………...13

## **Statutes**

28 U.S.C. § 1404(a) ........................................................... 1, 7, 32, 33

C.R.S. § 13-17-201 ...............................................................33

**Other Authorities**

Kevin R. Casey, <u>Identification of Trade Secrets during Discovery: Timing and
Specificity</u>, 24 AIPLA Q.J. 191, 204-212 (1996) .................................................31

*Restatement (Second) of Conflicts of Laws* § 187 (1969) ...........................................7

*Restatement (Second) of Torts* (1979) .......................................................... 19, 20, 21

**Rules**

C.R.C.P. 12(b)(5) .................................................................................16

F.R.C.P. 12(b)(2)................................................................................1, 5

F.R.C.P.
12(b)(6)……………………………………………………………………………1

F.R.C.P.
12(e)……………………………………………………………………1, 28, 32

Defendant Pharmatech, Inc. ("Pharmatech"), by and through undersigned counsel and pursuant to F.R.C.P. 12(b)(2), F.R.C.P. 12(b)(6), F.R.C.P. 12(e), and 28 U.S.C. § 1404(a), hereby brings this Brief in Support of its Motion to Dismiss or, in the alternative, for a More Definite Statement and to Transfer Venue ("Motion") and states the following in support:

## <u>INTRODUCTION</u>

Plaintiff's effort to hale Pharmatech into a New Jersey court violates Pharmatech's due process rights and is directly in violation of the parties' agreement that any such disputes would be resolved in Colorado.

Pharmatech is a Colorado corporation with insufficient contacts with the state of New Jersey to confer jurisdiction over Pharmatech. Moreover, Pharmatech did not purposefully avail itself of the privilege of conducting activities in New Jersey. Pharmatech entered into the contract with Plaintiff believing Plaintiff could deliver as promised under the terms of the contract. Those terms pertained to work to be performed nationally without any focus on New Jersey. The contract was agreed upon remotely and Pharmatech never attended any meetings in New Jersey. Finally, and most telling of the parties' expectations, Plaintiff drafted a contract that called for the application of Colorado law as well as venue in Colorado.

Apart from the Complaint's jurisdictional defect and the impropriety of this venue, Plaintiff's various claims do not survive scrutiny:

a.  Plaintiff's unjust enrichment claim must be dismissed because there is an express contract that governs the subject matter of the unjust enrichment claim.

b.  Several of Plaintiff's claims are incorrectly plead and additionally, some fail because—according to the Complaint's own language—those claims relate to mere "attempted" torts and/or breaches, which are not recognized causes of action, and in any event the tort claims are barred under the economic loss rule.

c.  Plaintiff's claim that Pharmatech has "taken" Plaintiff's proprietary information appears to be a claim for misappropriation and is so deficient in its particulars that Pharmatech cannot prepare a meaningful response.  That claim should be dismissed on other grounds, but if it is not, Plaintiff should be required to provide a more definite statement.

d.  Finally, Plaintiff's claims for punitive damages, indirect damages, special damages, and other damages above and beyond the fees called for by contract, are expressly prohibited by the contract itself and must be dismissed as a matter of law.

## BACKGROUND

### *Facts Pertaining to Personal Jurisdiction and Venue*

1.      Pharmatech's sole office is located in Denver, Colorado.   *See* Declaration of Robert Bohacs ("Bohacs Dec.") at ¶ 2, which is attached hereto for the limited purpose of stating facts pertaining to personal jurisdiction and venue.

2.      Pharmatech has significantly fewer employees than Plaintiff. *Compare* Bohacs Dec. at ¶ 3 *with* Complaint at ¶ 1.

3.      Pharmatech does not maintain any offices in New Jersey, does not own or lease any real property in New Jersey, does not maintain any bank accounts in New Jersey, and does not direct any advertising or marketing toward New Jersey.  Bohacs Dec. at ¶ 11.

4.      Pharmatech has several employees across multiple states who work remotely via web and telephone.  Two of those employees live in New Jersey, but their residence in New Jersey has no significance to Pharmatech's operations and no bearing on the contract at issue.  Bohacs Dec. at ¶ 5.

### *The Governing Contract and its Limitation of the Plaintiff's Action*

5.      Pharmatech and Plaintiff entered into a contract on May 30, 2013 (henceforth "Contract").  Complaint at ¶ 8; *see also* Exhibit A to Declaration of Maritza Dominguez Braswell, which is a true and correct copy of the Contract.

6.      The Contract is on Plaintiff's letterhead, and Plaintiff drafted the Contract.  Bohacs Dec. at ¶ 6.

7.      The parties intended, and Plaintiff wrote into the Contract, that any legal disputes would be resolved in Colorado.  *See* Contract at § 12; Bohacs Dec. at ¶ 7.

8.      Pharmatech and Plaintiff agreed to the essential terms of the Contract via email and telephone and Pharmatech never traveled to New Jersey to negotiate or execute the Contract.  Bohacs Dec. at ¶ 8.

9.      The Contract pertained to Plaintiff's work to be performed nationally and without any particular focus on New Jersey.  Bohacs Dec. at ¶ 9.

10.     The Contract referred to a "kick-off meeting" related to the services to be performed under the Contract.  Contract at § 11.  That "kick-off meeting" occurred via telephone, with Pharmatech employees located in Colorado.  Bohacs Dec. at ¶ 10.

11.     The Contract contains a clause limiting each party's liability to the other:

> IN NO EVENT WILL EITHER PARTY BE LIABLE TO THE
> OTHER PARTY FOR (A [sic] ANY SPECIAL,
> CONSEQUENTIAL, INDIRECT OR SPECIAL DAMAGES,
> INCLUDING ANY LOST PROFITS OR LOST PHARMATECH
> [sic] ARISING OUT OF THE SERVICES PERFORMED
> HEREUNDER; AND (B) ANY AMOUNTS IN EXCESS OF THE
> FEES PAID FOR THE SERVICES.

Contract at § 7 (capitalization in original).   Nevertheless, the Complaint asserts several claims which seek punitive damages.   *See generally* Complaint.

      12.    The Contract sets forth the parties' respective duties concerning the hiring of employees "for a period of eighteen (18) months following termination" of the Contract.  Contract at § 5.

      13.    The Contract also contains a clause labeled "Confidentiality & Non-Compete," which sets forth the parties' respective duties concerning "proprietary and confidential information."  Contract at § 6.

## LEGAL STANDARD

### *Personal Jurisdiction*

While a plaintiff's allegations must be accepted as true in deciding a motion to dismiss under F.R.C.P. 12(b)(2), the plaintiff bears the burden of proving, by a preponderance of the evidence, that personal jurisdiction is proper.  *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 257 (3d Cir. 1998) (citation omitted).

### *Failure to State a Claim*

"In order to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must allege facts that raise a right to relief above the speculative level."  *Figueroa v. City of Camden*, 580 F. Supp. 2d 390, 396-97 (D.N.J. 2008) (*citing Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).  "While a court must accept as true all allegations in the plaintiff's complaint, and

view them in the light most favorable to the plaintiff, a court is not required to accept sweeping legal conclusions cast in the form of factual allegations, unwarranted inferences, or unsupported conclusions. *Id.* at 397 (*citing Phillips v. County of Allegheny,* 515 F.3d 224, 231 (3d Cir. 2008); *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997)). "The complaint must state sufficient facts to show that the legal allegations are not simply possible, but plausible." *Id.* (*citing Phillips,* 515 F.3d at 234).

Where a document is expressly referenced throughout a Complaint or is otherwise central to a plaintiff's claims, the Court may consider the document itself when ruling on a motion to dismiss without converting the motion into a motion for summary judgment. *Yadon v. Lowry*, 126 P.3d 332, 335-36 (Colo. App. 2005); *see also Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir.1993) (noting, "[o]therwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied").

### *Venue*

A forum-selection clause in a contract "may be enforced through a motion to transfer under [28 U.S.C.] § 1404(a)." *Atl. Marine Const. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Texas*, 134 S. Ct. 568, 579 (2013). "[P]roper application of § 1404(a) requires that a forum-selection clause be given controlling weight in all

but the most exceptional cases" due to the "interest of justice" clause in 28 U.S.C.

§ 1404(a).  *Id.* (citations and quotation marks omitted).

## CHOICE OF LAW

With regard to a contractual choice of law provision, federal courts sitting in diversity look to the law of the forum state in making a choice of law determination.  *Robeson Industries Corp. v. Hartford Acc. & Indem. Co.*, 178 F.3d 160, 165 (3d Cir. 1999) (citations omitted).   New Jersey law states that a contractual choice of law provision will be upheld unless doing so would violate its public policy.  *Lucey v. FedEx Ground Package Systems, Inc.*, No. 07-4372, 2009 WL 51644, at *1 n. 3 (3d Cir. Jan. 8, 2009);  *see also Instructional Systems, Inc. v. Computer Curriculum Corp.*, 130 N.J. 324, 341-42, 614 A.2d 124, 133 (N.J. 1992) (following the *Restatement (Second) of Conflicts of Laws* § 187 (1969), which provides that "the law of the state chosen by the parties will apply, unless either: (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which…would be the state of the applicable law in the absence of an effective choice of law by the parties").

Where, as here, the chosen state is where one of the parties resides or has its headquarters, courts have found the chosen state to have a sufficiently "substantial relationship" to the parties and have upheld the parties' choice of law. *Campmor, Inc. v. Brulant, LLC*, Civ. No. 09-5465, 2010 WL 1381000, at *2 (D.N.J. Apr. 1, 2010); *In re Frontier Airlines, Inc.*, 88 B.R. 332, 335 (Bankr. D. Colo. 1988).

## **ARGUMENT**

### I.     **The Complaint Should Be Dismissed Because Pharmatech Lacks Minimum Contacts Sufficient to Establish Personal Jurisdiction in New Jersey**

The Third Circuit has stated the following with respect to personal jurisdiction over an out-of-state defendant:

> [T]o exercise personal jurisdiction over a defendant, a federal court sitting in diversity must undertake a two-step inquiry. First, the court must apply the relevant state long-arm statute to see if it permits the exercise of personal jurisdiction; then, the court must apply the precepts of the Due Process Clause of the Constitution. In New Jersey, this inquiry is collapsed into a single step because the New Jersey long-arm statute permits the exercise of personal jurisdiction to the fullest limits of due process.  This being the case, the New Jersey Supreme Court has made it clear that New Jersey courts look to federal law for the interpretation of the limits on in personam jurisdiction.

*IMO Indus.*, 155 F.3d at 258-59 (citations omitted).

Personal jurisdiction under the due process clause requires the plaintiff to show that the defendant has "purposefully directed its activities toward the residents of the forum state, or otherwise purposefully availed itself of the privilege

8

of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* at 259 (citations omitted).

Independent of specific jurisdiction, "[g]eneral jurisdiction exists when a defendant has maintained systematic and continuous contacts with the forum state." *Kehm Oil Co. v. Texaco, Inc.*, 537 F.3d 290, 300 (3d Cir. 2008). To warrant the exercise of general jurisdiction, these contacts must be so pervasive that the defendant is "essentially at home" in the forum state. *Faber v. Townsend Farms, Inc.*, Civ. A. No. 13-cv-02423, 2014 WL 2892249, at *4 (D. Colo. June 26, 2014) (citation and quotation marks omitted); *Cmty. Fin. Grp., Inc. v. Stanbic Bank Ltd.*, Civ. A. No. 12-3851, 2013 WL 3223371, at *2 (D.N.J. June 25, 2013) (*citing Goodyear Dunlop Tires Op., S.A. v. Brown,* 131 S.Ct. 2846, 2851 (2011)).

## A.      Specific Jurisdiction Over Pharmatech is Lacking

*First,* there are insufficient contacts with New Jersey to confer specific jurisdiction.  Pharmatech agreed to the Contract from Colorado, entered the Contract from Colorado, and participated in the "kick-off meeting" contemplated by the Contract from Colorado.  Pharmatech merely phoned into New Jersey when corresponding with Plaintiff concerning the Contract, and those phone calls were short and infrequent.  Bohacs Dec. at ¶ 8.  These types of communication have been found insufficient to satisfy the minimum contacts requirement for specific jurisdiction.  *See Mellon Bank (East) PSFS, N.A. v. DiVeronica Bros., Inc.*, 983

9

F.2d 551, 556 (3d Cir.1993) (telephone calls to forum state held insufficient to confer personal jurisdiction); *see also Pfundstein v. Omnicom Group Inc.*, 285 N.J. Super. 245, 251-52, 666 A.2d 1013, 1016 (1995) (finding insufficient contacts where the only connection to New Jersey was that plaintiff was a New Jersey resident and there were interstate phone and mail communications leading up to the formation of the contract at issue).

*Second,* Pharmatech did not purposefully avail itself of the privilege of conducting business in New Jersey.  The Contract <u>does not</u> pertain to New Jersey-centric work or services and Plaintiff fails to plead any nexus between its services and New Jersey.  Plaintiff alleges that,

> CMP forms and establishes sales forces or sales groups which a company can retain to locate and qualify opportunities with pharmaceutical companies and life services or medical equipment companies, to whom the client can then sell its products and services.

Complaint at ¶ 3.  The Complaint goes on to describe CMP's business model, contact list, processes, and information exchange, *none* of which is alleged to have a New Jersey focus.  Complaint at ¶¶ 4-7.

Although Pharmatech has several employees that work remotely and two happen to live in New Jersey, those employees were not involved in procuring the Contract or in performing any services under the Contract.  Thus, this minor New Jersey connection is entirely unrelated to the litigation.

10

Furthermore, the only New Jersey connection Plaintiff pleads other than its own residence, is that the Contract "was entered into in New Jersey, with all of CMP services being performed in New Jersey."[1]  Complaint at ¶ 9.  However, that Plaintiff may have performed this nationwide work from New Jersey is of no moment because Plaintiff's "unilateral activity" does not constitute Pharmatech's "purposeful availment" of the laws of the state of New Jersey required for specific jurisdiction.  *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (the "purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party") (citations and internal punctuation omitted); *see also D'Elia v. Grand Caribbean Co.*, Civ. A. No. 09-1707, 2011 WL 6153704, at *6 (D.N.J. Dec. 12, 2011) (dismissing case for lack of personal jurisdiction and stating, "'an individual's contract with an out-of-state party alone [cannot] automatically establish sufficient minimum contacts in the other party's home forum.'") (*quoting Burger King Corp.*, 471 U.S. at 478) (brackets in original).

Pharmatech never sought to engage CMP *because* they are a New Jersey company.  Pharmatech engaged CMP because CMP purported to have nationwide contacts and the ability to deliver under the terms of the Contract (none of which were New Jersey focused).  Bohacs Dec. at ¶ 9.  Thus, Pharmatech never

---

[1] As set forth above, however, Pharmatech agreed to the Contract while located in Colorado.  *See* Bohacs Dec. at ¶ 8.

purposefully availed itself of the privilege of conducting any activity in New Jersey; and moreover, the choice of law provision in the Contract reflects a clear intent to invoke the benefits and protections of *Colorado* law, <u>not</u> New Jersey law. *See generally Burger King Corp.*, 471 U.S. at 482 ("choice-of-law provision [need not] be ignored in considering whether a defendant has purposefully invoked the benefits and protections of a State's laws for jurisdictional purposes.") (internal quotation marks omitted).

*Third*, even if the Court determines that Pharmatech purposefully established minimum contacts with New Jersey, other factors must be considered in determining "whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King Corp.*, *supra*, 471 U.S. at 476 (*quoting International Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)). Those factors include the burden on the defendant, and the interstate judicial system's interest in obtaining the most efficient resolution of controversies. *Id.* at 477 (*citing World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).

Here, those factors counsel against the Court's exercise of jurisdiction. Plaintiff is a larger company than Pharmatech, and it would substantially burden Pharmatech to appear in New Jersey to litigate this case. Bohacs Dec. at ¶¶ 3, 12; Complaint at ¶ 1. *See Burger King Corp., supra,* 471 U.S. at 476-77. Moreover, the Contract calls for the application of Colorado law, and having a Colorado court

12

apply Colorado law would be "the most efficient resolution" of this controversy. *Id.*

As such, the Court should decline to exercise specific jurisdiction over Pharmatech.

### B.      General Jurisdiction Over Pharmatech is Lacking

In the absence of specific jurisdiction over Pharmatech in this matter, the Court may inquire of its general jurisdiction over Pharmatech.  No such general jurisdiction exists.

Pharmatech's sole office is in Colorado.  Bohacs Dec. at ¶ 2.  Although Pharmatech has many employees who work remotely and two of them happen to live in New Jersey, Pharmatech does not maintain any offices in New Jersey, does not own or lease any real property in New Jersey, does not maintain any bank accounts in New Jersey, and does not direct any advertising or marketing toward New Jersey.  Bohacs Dec. at ¶ 11.  Simply put, Pharmatech does not have the "systematic and continuous contacts" with New Jersey that would warrant the exercise of general jurisdiction.  *Kehm Oil Co.*, 537 F.3d at 300; *see also Zibiz Corp. v. FCN Technology Solutions*, 777 F.Supp.2d 408, 419 (E.D.N.Y. 2011) (collecting cases to support the proposition that the mere presence of a telecommuting employee within the forum state is insufficient to establish general jurisdiction); *Craig v. Siemens Energy, Inc.*, 2011 WL 3240458, *2 (W.D.La. Jun.

22, 2011) (finding defendant's presence in Louisiana fell short of the substantial, continuous and systematic contacts required for general jurisdiction where defendant had no office, phone, mailing address, bank account, real estate or other assets, but had a small operation with only 10 of its 2,000 employees there); *Ingeniador, LLC v. Interwoven,* 874 F.Supp.2d 56, 62 (D. Puerto Rico 2012) (finding it could not assert general jurisdiction over a company that was not registered in Puerto Rico, did not have bank accounts or a mailing address in Puerto Rico, and had only one employee and sixteen clients in Puerto Rico). Nor is Pharmatech "essentially at home" in New Jersey, such that the exercise of general jurisdiction would be appropriate.

Given that neither specific nor general jurisdiction exists, the Court should dismiss this case. If the Court is inclined to decide the issue of personal jurisdiction on the basis of any inferences drawn in Plaintiff's favor, Pharmatech requests a hearing on the matter of personal jurisdiction so any factual issues can be fully addressed.

## II.   If the Court Does Not Dismiss the Entire Complaint for Lack of Personal Jurisdiction, It Should Dismiss Plaintiff's Tort Claims For Failure to State a Claim, and As Barred By the Economic Loss Rule

In its third and fourth claims, Plaintiff alleges tortious interference with a contract and tortious interference with prospective economic advantage. Plaintiff

fails to plead the necessary elements, but in any event is barred from making those claims pursuant to the economic loss rule.

### A.   The Court Should Dismiss Plaintiff's Third Count for "Tortious Interference of Contract"

Plaintiff's Tortious Interference of Contract claim must be dismissed because Plaintiff has failed to plead the requisite elements and because the claim is barred by the economic loss rule.

"To be liable for intentional interference with contract, a defendant must 1) be aware of a contract between two parties, 2) intend that one of the parties breach the contract, 3) and induce the party to breach or make it impossible for the party to perform the contract."  *Krystkowiak v. W.O. Brisben Companies, Inc.*, 90 P.3d 859, 871 (Colo. 2004).[2]

Plaintiff has failed to plead the third element—that Pharmatech's actions *actually* induced a breach of the underlying contract.  Indeed, other than a passive reference to a purported "employment contract," Plaintiff does not allege any facts concerning the underlying "employment contract."  Complaint ¶ 26.  Plaintiff does not allege whether that contract is valid, enforceable, and binding, or terminable at will.  Thus, Plaintiff does not sufficiently plead even the existence of a valid

---

[2] *See also Foxtons, Inc., v. Cirri Germain Realty,*  2008 WL 465653 at *7 (N.J. Super. Ct. App. Div. App. Feb. 22, 2008) (holding plaintiff must prove the following, similar elements to succeed on its tortious interference claim: 1) actual interference with the contract; 2) that the interference was inflicted intentionally by a defendant who is not a party to the contract; 3) that the interference was without justification; and 4) that the interference caused damage—and dismissing the claim for failure to sufficiently plead facts relating to defendants' conduct and intent).

contract that is susceptible to breach, much less an *actual* breach of that contract (indeed, the allegations show the exact opposite—that there was no actual breach—because Plaintiff alleges Pharmatech merely "attempted" to hire an employee). Plaintiff's third claim for Tortious Interference of Contract must therefore be dismissed. *See Baker v. Carpenter*, 33 516 P.2d 459, 461 (Colo. App. 1973) (affirming the dismissal of a tortious interference with contract claim because the actions of the defendant could not have actually induced a breach where there was in fact no breach of the underlying contract).

Additionally, and even assuming Plaintiff adequately pled a tortious interference of contract claim, the economic loss rule bars such a claim here.[3] Pursuant to the economic loss rule, which "serves to maintain a distinction between contract and tort law," a plaintiff must make the mandatory election between breach of contract claims or tort claims "at the outset of a lawsuit." *Town of Alma v. Azco Constr., Inc.*, 10 P.3d 1256, 1262-64 (Colo. 2000) ("We have previously recognized a court's duty to determine, at the outset of a lawsuit, the type of duty that has allegedly been breached") (citation omitted). Although courts have found that the economic loss rule creates "substantial confusion," the "confusion can be avoided… by maintaining the focus on the source of the duty alleged to have been

---

[3] If tort claims are barred by the economic loss rule, they are properly dismissed at the outset of a lawsuit through a motion to dismiss. *See Van Rees v. Unleaded Software, Inc*., No. 12CA1014, 2013 WL 6354532, at * 2-4 (Colo. App. Dec. 5, 2013) (affirming trial court's dismissal of tort claims, including claims for fraud and negligent misrepresentation, under C.R.C.P. 12(b)(5), pursuant to economic loss rule).

violated." *Id.* at 1263.  Where a tort claim is based solely on the alleged breach of a

contractual duty and results purely in economic loss,[4] it is barred by the economic

loss rule.  *Id.* at 1266.[5]  See *JDB Med., Inc. v. The Sorin Grp., S.p.A.*, Civ. Action

Nos. 07-cv-00350, 07-cv-00591, 2008 WL 10580039, at *5 (D. Colo. June 11,

2008).

In *JDB Med,* the court confronted a claim for interference with an agreement

between plaintiff and its sub-representative.  *Id.* at *4.  The claim alleged "that

[defendant] induced [plaintiff's sub-representative] to abandon his sub-

representative agreement with [plaintiff], and to work directly for [defendant]

instead." *Id.* at *6.  However, because "[t]he standards applicable to [defendant's]

actions concerning sub-representatives are controlled by the [contract between

plaintiff and defendant,]" the court found that dismissal under the economic loss

rule was appropriate.  *Id.*

Similarly here, this is a contract case, not a tort case.  The subject matter that

forms the basis for each of Plaintiff's claims, including its third claim for Tortious

Interference of Contract is expressly covered by the Contract.  Indeed, Plaintiff's

third count expressly relies on "Clause 5" of the Contract whereby the parties

---

[4] "Economic loss is defined generally as damages other than physical harm to persons or property." *Town of Alma*, 10 P.3d at 1264.
[5] New Jersey courts similarly find that the economic loss rule "bars resort to tort theories of liability when the relationship between the parties is based on a contractual relationship." *Horizon Grp. Of New England, Inc. v. N.J. Schools Constr. Corp.*, 2011 WL 3687451, at *5 (N.J. Super. App. Div. Aug. 24, 2011) (affirming dismissal of tort claims pursuant to the economic loss rule because the parties' duties were defined by contract).

agreed to "not hire each other [sic] employees."   Complaint at ¶ 25.   It is the alleged "attempted" breach of Clause 5 in the Contract—and not some independent tort—that forms the basis for Plaintiff's third claim for relief. *Id.* at ¶ 26.

Because the economic loss rule prevents Plaintiff from transforming what are truly contract claims into tort claims, and because Plaintiff has failed to properly plead a tortious interference of contract claim, Plaintiff's third claim for Tortious Interference of Contract should be dismissed as a matter of law.

**B.    The Court should Dismiss Plaintiff's Fourth Count for "Tortious Interference of Prospective Economic Advantage"**

Plaintiff's Tortious Interference of Prospective Economic Advantage claim should also be dismissed because Plaintiff has failed to plead the requisite elements, and because the claim is barred by the economic loss rule.

"Under Colorado law, 'the crucial question in determining liability for tortious interference with prospective financial advantage is whether defendant's interference was intentional and improper.'" *Occusafe, Inc. v. EG&G Rocky Flats, Inc.*, 54 F.3d 618, 622 (10th Cir. 1995) (*quoting Cronk v. Intermountain Rural Elec. Ass'n*, 765 P.2d 619, 623 (Colo. App. 1988)).[6]

---

[6] Similarly, under New Jersey law, a plaintiff must plead and prove intent and malice. *Kopp, Inc. v. United Technologies, Inc.*, 223, N.J. Super. 548, 559, 539 A.2d 309, 315 (N.J. Super. Ct. App. Div. 1988) ("this cause of action requires a tripartite situation wherein a third party intentionally and maliciously interferes with a present or prospective relationship between two other parties").

The Complaint contains no allegation that Pharmatech's actions were improper. Instead, Plaintiff merely alleges that Pharmatech has continued to contact other businesses using information introduced by Plaintiff, and that contact allegedly has resulted in a benefit to Pharmatech, to the detriment of CMP. Complaint ¶¶ 30-33. Even if these allegations are accepted as true (as they must be for the limited purpose of resolving this motion to dismiss) there is nothing "improper" about any alleged continued contact with other businesses. In short, Plaintiff has failed to plead (and indeed cannot prove) any impropriety on the part of Pharmatech. Thus, Plaintiff's fourth claim for Tortious Interference of Prospective Economic Advantage should be dismissed.

Additionally, with reference to the *Restatement (Second) of Torts* (1979),[7] *Occusafe* clarifies an important exception to viable suits for intentional interference with prospective economic advantage:

> As a general rule, however, a plaintiff cannot sue one of its competitors for intentional interference in prospective economic advantage. This "competitor's privilege" is set out in section 768(1) of the *Restatement of Torts*, which has been endorsed by the Colorado Supreme Court. Section 768(1) specifically provides:
>
> > One who intentionally causes a third person not to enter into a prospective contractual relation with another who is his competitor ... does not interfere improperly with the other's relation if (a) the relation concerns a matter involved in the competition between the actor and the other and (b) the actor does not employ wrongful means

---

[7] *See* the *Occusafe* court's abbreviation of the *Restatement (Second) of Torts*' title at 54 F.3d at 622.

19

> and (c) his action does not create or continue an unlawful
> restraint of trade and (d) his purpose is at least in part to
> advance his interest in competing with the other.

*Occusafe*, 54 F.3d at 622-23 (internal citations omitted).  This competitor's privilege "applies when the parties compete *in any way*[.]"  *Id.* at 623 (emphasis in original).

Here, Plaintiff's own allegations import application of the competitor's privilege.  Plaintiff alleges that Pharmatech has "the goal of placing Pharmatech in the place of CMP in regard to any relationship with CMP's customers and business contacts."  Complaint at ¶ 32.  This allegation has little meaning if CMP does not consider itself to be in competition with Pharmatech over the subject "customers and business contacts."

Applying this carve-out, Plaintiff's fourth claim for Tortious Interference of Prospective Economic Advantage should be dismissed for failure to sufficiently plead the inapplicability of the competitor's privilege.  *See Restatement (Second) of Torts,* § 768 (1979), cmt a (under the "American system of free enterprise[,]" the failure to plead the inapplicability of the competitor's privilege can constitute the failure to plead a claim for tortious interference of prospective economic advantage, as there is "no consensus" that the privilege is instead an affirmative defense).

*First*, the term "wrongful means" in the Restatement's articulation of the competitor's privilege "refers to conduct such as 'physical violence, fraud, civil suits, and criminal prosecutions.'" *Id.* (citations omitted). Plaintiff has not alleged that Pharmatech employed any "wrongful means." Indeed, and as discussed above, Plaintiff has not even alleged impropriety, much less conduct rising to the level of fraud or violence, as would be required to avoid application of the competitor's privilege.

*Second*, Plaintiff alleges no unlawful restraint of trade in Pharmatech's actions. *Third*, Plaintiff's allegation that Pharmatech is seeking to place itself "in the place of CMP in regard to any relationship with CMP's customers and business contacts[,]" (Complaint at ¶ 32)—if accepted as true for the limited purpose of adjudicating this motion to dismiss—concedes the last element of the competitor's privilege: that Pharmatech's "purpose is at least in part to advance [its] interest in competing with [Plaintiff]." In sum, the Complaint fails to allege sufficient facts to avoid application of the "competitor's privilege," and therefore fails as a matter of law.

Additionally, Plaintiff's fourth count should be dismissed because it is barred by the economic loss rule. *See generally supra* Section II.A. (discussing application of the economic loss rule). A claim for interference with prospective business advantage was dismissed pursuant to the economic loss rule in similar

circumstances in *Sweeney v. Marvin Windows, Inc.*, Civ. A. No. 10-cv-00457, 2010 WL 4256195 (D. Colo. Oct. 20, 2010). The *Sweeney* plaintiff alleged, *inter alia*, that defendants tortiously interfered with plaintiff's prospective economic advantage when defendants encouraged a sales representative to leave plaintiff's employment. *Id.* at *4. The court rejected the argument, finding that "[b]ecause Plaintiff has not identified any duties independent of his contractual agreement with the Defendants or other conduct amounting to improper interference, I conclude that this claim should be dismissed." *Id. See also JDB Med., Inc., supra*, 2008 WL 10580039 at *6 (dismissing interference with prospective business relationships claim pursuant to economic loss rule because issue was "tied directly" to contract between parties).

Here, Plaintiff's fourth count is based on Pharmatech's alleged taking of "proprietary business information" and "business contact information." Complaint at ¶ 30. But the Contract expressly governs the parties' conduct with respect to proprietary information. *See* Contract at § 6 ("CMP and Pharmatech agree to maintain the secrecy of each other's proprietary and confidential information in accordance with the mutual Non-disclosure Agreement already executed by both parties."). Plaintiff cannot supplant the previously agreed upon contractual terms and inject new duties into this contractual relationship under the guise of a tort claim. The fourth count should be dismissed pursuant to the economic loss rule.

### III.   Plaintiff's Second, Fifth, and Sixth Claims are Duplicative and Should Be Dismissed For Failure to State a Claim Upon Which Relief Can Be Granted

#### A.   The Court Should Dismiss Plaintiff's Second Count for "Bad Faith Dealing" Because it is Duplicative of Plaintiff's Third Count for Tortious Interference of Contract, Fails to State a Claim, and is based on the Express Terms of the Contract

Plaintiff's second claim for Bad Faith Dealing is merely a recasting of Plaintiff's third claim for Tortious Interference of Contract. *Compare* Complaint at ¶¶ 16-20, *with id.* at ¶¶ 23-27 (Both are premised on Clause 5 of the Contract, which precludes hiring the others party's employees, and both are premised on the allegation that Pharmatech attempted to hire Plaintiff's employees. Courts have held that duplication alone is grounds for dismissal. *Jones v. Lehmkuhl*, Civ. A. No. 11-cv-02384, 2013 WL 6728951, at *14 (D. Colo. Dec. 20, 2013); *Roberts v. Velez*, Civ. A. No. 11-1198, 2011 WL 2745939, at *5 (D.N.J. July 12, 2011) (dismissing claims as duplicative). Pharmatech respectfully requests that the Court dismiss Plaintiff's second claim as duplicative.

Moreover, to the extent Plaintiff's second claim amounts to an allegation that Pharmatech breached the implied covenant of good faith and fair dealing in the Contract, Plaintiff has failed to state a claim. Colorado courts recognize that the duty of good faith and fair dealing arises "when one party has discretionary authority to determine certain terms of the contract, such as quantity, price, or time. The duty may be relied upon only when the manner of performance under a

23

specific contract term allows for discretion on the part of either party." *Builder MT LLC v. Zybertech Const. Software Servs., LTD*, Civ. A. No. 08-cv-00435, 2008 WL 4724146, at *3 (D. Colo. Oct. 24, 2008) (citation and internal quotation marks omitted). Here, Plaintiff fails to state a claim. There is no allegation that there was any discretion in the performance of the Contract.

Furthermore, a breach of implied duty of good faith and fair dealing claim will not survive where it is based upon, or would supplant, an express contract term. *Gloston v. ITT Fed. Servs. Int'l Corp.*, Civ. A. No. 06-cv-02168, 2007 WL 1830486, at *3 (D. Colo. June 21, 2007) (dismissing claim for breach of covenant of good faith and fair dealing to the extent it was "based on breach of an express term of the [contract and thus] subsumed under plaintiff's properly pled breach of contract claim and does not constitute a separate claim for relief"); *Coldwell Banker Real Estate, LLC v. Plummer & Associates, Inc.*, Civ. A. No. 09-1313, 2009 WL 3230840, at *3 (D.N.J. Oct. 2, 2009) (allegations failed to state a claim for breach of implied covenant of good faith and fair dealing failed to state a claim where "allegations pertain to conduct expressly governed" by the contract).

Here, Plaintiff's second claim for Bad Faith Dealing is anchored in the express terms of the Contract, *see* ¶¶ 18-19 (alleging an "attempted" breach of Clause 5 of the Contract), and Plaintiff cannot use the implied duty to supplant those express terms. Pharmatech did not breach Clause 5 (indeed Plaintiff does not

allege that).  And any "attempted" breach (though there was none) is simply not actionable under the Contract.[8]  Thus, to the extent the second claim is considered a claim for breach of the implied duty of good faith and fair dealing, it must be dismissed as a matter of law.[9]

### B.    The Court Should Dismiss Plaintiff's Fifth Count for "Unjust Enrichment because an Express Contract Covers the Subject Matter of this Dispute

Plaintiff's fifth claim for unjust enrichment also fails.  "[I]t is generally the case that when a valid, express contract covers the subject matter of the parties' dispute, a plaintiff cannot recover under a quasi-contract theory such as unjust enrichment."  *DBA Distribution Servs., Inc. v. All Source Freight Solutions, Inc.*, Civ. A. No. 11-390, 2012 WL 845929, at *5 (D.N.J. Mar. 13, 2012) (internal quotation marks and citations omitted).  Plaintiff does not disavow the Contract or in any way plead its fifth claim for relief in the alternative.  The fifth claim for relief is not independent from the contract claims, plainly duplicates Plaintiff's breach of contract claim, and should be dismissed.

---

[8] Moreover, "[i]n tort law, unsuccessful attempts do not give rise to liability...."  *U.S. v. Gladish*, 536 F.3d 646, 648-49 (7th Cir. 2008); *see also McAlpine v. AAMCO Automatic Transmissions, Inc.*, 461 F. Supp. 1232, 1273 (E.D. Mich. 1978) ("Attempted interference with contract cannot rise to the level of tortious interference with contract merely because an attempt to interfere has been made.").
[9] To the extent this second claim for "Bad Faith Dealings" does *not* amount to a claim for breach of the implied duty of good faith and fair dealing and is instead considered a tort claim, it too (like its tort claim counterpart- tortious interference of contract) must be dismissed pursuant to the economic loss rule.

### C.   The Court Should Dismiss Plaintiff's Sixth Count for "Account Stated"  Because it Fails to State a Claim and is Duplicative

Plaintiff's sixth claim for relief ("Account Stated") fails to state a claim for relief.  A claim for an account stated requires the allegation that the alleged creditor and alleged debtor both agree as to the exact and definite amount of money owed and that the alleged debtor agreed to pay that amount.  *Conyers v. Lee*, 511 P.2d 506, 507 (Colo. App. 1973); *Manley Toys, Ltd. v. Toys R Us, Inc.*, Civ. No. 12-3072, 2013 WL 244737, at *5 (D.N.J. Jan. 22, 2013).   Such allegations are absent from Plaintiff's sixth claim for relief, and it should be dismissed for failure to state a claim.

Additionally, the sixth claim for relief is duplicative of Plaintiff's breach of contract claim.  It does not assert the breach of any duty independent of the Contract.  Plaintiff alleges that it performed its duties "under the contract[,]" that it invoiced Pharmatech for those services, and that Pharmatech did not pay the amount due because of Plaintiff's supposed performance of the Contract services.  Complaint at ¶¶ 41-43.  The sixth claim for relief is no different than a breach of contract claim and should be dismissed as duplicative.  *See Consol. Brick & Bldg. Supplies, Inc. v. Alosi Const., Inc.,* Civ. A. No. 05-1490, 2006 WL 2135805, at *7 (D.N.J. July 28, 2006) (after addressing breach of contract claim, court refused to address claim for account stated because it was "duplicative").

**IV.      Pursuant to the Liability Clause in the Contract, the Court Should Dismiss Plaintiff's Request For All Compensatory and Punitive Damages As Well As Any Costs and Fees and Other Special Damages**

Under the express terms of the Contract, Plaintiff is not entitled to punitive or other special damages, fees or costs.  *See* Contract at § 7 (precluding recovery of any special, consequential, indirect, or special damages arising out of the services performed under the Contract,  or any amounts in excess of the fees paid in connection with the Contract).  Because the Contract unambiguously limits the relief Plaintiff can obtain and prohibits the types of damages Plaintiff seeks in several of its claims, the Plaintiff's request for those excess damages is barred by the Contract, and should be denied.  *See Centerpoint Grp. LLC v. Perot Sys. Inc.*, Civ. A. No. 10-806, 2010 WL 2522080, at *3 (D.N.J. June 15, 2010) (giving effect, on motion to dismiss, to "unambiguous limitation of liability provision" in contract to find plaintiff did not plead viable damages element in breach of contract claim).

**V.      Plaintiff Fails to Plead its Apparent Misappropriation Claim with Sufficient Particularity and The Court Should Require That Plaintiff Provide a More Definite Statement**

Plaintiff's fourth claim for tortious interference with prospective economic advantage should be dismissed for the reasons set forth above.  *See supra,* Section II.B. (discussing dismissal for failure to state a claim and under the economic loss rule).

27

In the alternative, and to the extent the Court does not dismiss the fourth claim, Plaintiff should be ordered to provide a more definite statement pursuant to F.R.C.P. 12(e). Following such an order, Pharmatech requests dismissal of the fourth claim if the order is not timely obeyed as contemplated by F.R.C.P. 12(e).

The Complaint's fourth claim for relief alleges that Pharmatech has taken some alleged "proprietary business information designed and developed by CMP," and "all of CMP's business contact information." Complaint at ¶ 30. The allegation appears to amount to a claim for misappropriation of a trade secret, but the Complaint fails to specify the allegations in any meaningful detail, especially in light of the fact that the *raison d'être* of the Contract was to put Pharmatech in touch with other businesses.

On this pleading, Pharmatech cannot discern what "proprietary business information" forms the basis for the allegation, on what basis that supposed information is proprietary, whether the information was actually provided to Pharmatech, or whether Pharmatech actually has the purported information in its possession. Thus, under F.R.C.P. 12(e), the claim is so vague and ambiguous that the Defendant cannot reasonably prepare a response. Moreover, a more definite statement will help define the contours of discovery in this case.

This result is appropriate because courts around the country have found that claims alleging misappropriation of a trade secret must identify with particularity

the trade secrets at issue.  *See*, *e.g.*, *Saturn Sys. Inc. v. Militare,* 252 P.3d 516, 522

(Colo. App. 2011) (a "plaintiff should describe the subject matter of the trade

secret with sufficient particularity.") (*citing Imax Corp. v. Cinema Techs., Inc.,* 152

F.3d 1161, 1164-65 (9th Cir. 1998)); *Knights Armament Co. v. Optical Sys. Tech.,*

*Inc.,* 254 F.R.D. 463, 468 (M.D.Fla. 2008) ("It is axiomatic that a party may not

assert a cause of action for misappropriation of trade secrets without identifying for

the opposing party the trade secrets at issue."); *Sutra, Inc. v. Iceland Express, EHF,*

Civ. A. No. 04-11360, 2008 WL 2705580, at *3 (D. Mass July 10, 2008)

(dismissing trade secret claim for failure to identify trade secret with particularity

and stating, "It is hornbook law that 'the parties and the court cannot accurately

decide the question of whether a trade secret exists without first understanding

what precisely is asserted as a secret.'"); *DeRubeis v. Whitten Tech., Inc.,* 244

F.R.D. 676, 681 (N.D. Ga. 2007) ("Weighing the various considerations, the Court

finds that it is appropriate in this case to require Whitten to first identify with

'reasonable particularity' those trade secrets it believes to be in issue."); *Porous*

*Media Co. v. Midland Brake, Inc.,* 187 F.R.D. 598, 600 (D. Minn. 1999)

("Ordering the listing of trade secrets at the outset of the litigation is a common

requirement. . . . Failure to identify the trade secrets with sufficient specificity

renders the Court powerless to enforce any trade secret claim."); *FMC Corp. v.*

*Cyprus Foote Mineral Co.,* 899 F. Supp. 1477, 1481 (W.D.N.C. 1995) ("FMC has

not come forward with evidence establishing the precise nature of its trade secrets."); *Levenger Co. v. Feldman,* 516 F. Supp. 2d 1272, 1287 (S.D. Fl. 2007) ("For there to be actionable misappropriation, the party asserting trade secret protection bears the dual burden of describing the alleged trade secret information and also showing that it has taken reasonable steps to protect this secrecy . . ."); *Analog Devices, Inc. v. Michalski,* 579 S.E.2d 449, 453 (N.C. App. 2003) ("It is generally accepted that a plaintiff must identify a trade secret with sufficient particularity so as to enable a defendant to delineate that which he is accused of misappropriating and a court to determine whether misappropriation has or is threatened to occur."); *Del Monte Fresh Produce Co. v. Dole Food Co.,* 148 F. Supp. 2d 1322, 1325 (S.D. Fl. 2001) ("Because Del Monte is asking this court to find that trade secrets exist and were misappropriated by Dr. Funk, Del Monte must reveal the information it ultimately seeks to protect.").

This threshold disclosure requirement for discovery in trade secret cases serves several purposes.  First, this requirement ensures that a plaintiff bringing a misappropriation of trade secret claim cannot simply go on a "fishing expedition" to discover a defendant's own trade secrets that may not be at all relevant to the claim of misappropriation.  Second, and relatedly, a particularized description of the allegedly misappropriated trade secret will inform the relevancy of the discovery to be conducted in the case, and prevents a plaintiff from simply shaping

its misappropriation allegations to whatever the plaintiff discovers from a defendant. Third, the specificity requirement facilitates a defendant's right to prepare a defense. *See generally* Kevin R. Casey, <u>Identification of Trade Secrets during Discovery: Timing and Specificity</u>, 24 AIPLA Q.J. 191, 204-212 (1996), and authorities cited therein. To enforce these principles, the question of the sufficiency of a plaintiff's disclosure of allegedly misappropriated trade secrets is a fact-specific question to be determined on a case-by-case basis. *Id.* at 241.

Plaintiff insufficiently defines what it means by "proprietary business information" and "business contact information[.]" Complaint at ¶ 30. Unless Plaintiff provides a more definite statement of what it means by "proprietary business information" and "business contact information," Pharmatech cannot reasonably respond to Plaintiff's allegations. Depending upon how Plaintiff defines these terms, Pharmatech may have any number of responses, including but not limited to:

- The information is not confidential or of value.

- To the extent the information was confidential or of value, Plaintiff did not protect that information or otherwise disclosed it.

- Pharmatech has no knowledge of the information.

However, without a more definite statement of what Plaintiff means by "proprietary business information" and "business contact information," Pharmatech cannot meaningfully respond.

31

Further, unless Plaintiff defines the "proprietary business information" and "business contact information" that it believes have been misappropriated with reasonable particularity, the Court and the parties will be limited in their ability to apply the rules of discovery to this case.   As such, Pharmatech respectfully requests that the Court order Plaintiff to provide a more definite statement pursuant to F.R.C.P. 12(e).

## VI.   This Case Should be Transferred to the District of Colorado Pursuant to the Contract's Forum Selection Clause and 28 U.S.C. § 1404(a)

To the extent the Court declines to dismiss this matter for all the reasons set forth above, this case should be transferred pursuant to the Contract's venue (or forum selection) clause.

Clause 12 of the Contract is labeled "Venue[.]"  This clause clearly relates to Colorado.   Plaintiff drafted, and both parties agreed to and signed, the Contract containing the very venue clause Plaintiff now ignores.   By signing the Contract with a "Venue" clause that relates to Colorado, Pharmatech manifested an intent to litigate all disputes related to the Contract in Colorado.   There is no clause in the Contract that disclaims the clause headers—such as the "Venue" header—as non-substantive.   Labeling clause 12 with a "Venue" header in connection with a reference to Colorado reflects a desire to enter into a binding Colorado forum-selection clause.   As such, this case should be transferred to the District of Colorado pursuant to 28 U.S.C. § 1404(a).

To the extent that clause 12 of the Contract—which conjoins a "Venue" header with mention of Colorado—is  considered ambiguous as to the proper venue for this dispute, that ambiguity should be construed against Plaintiff, who drafted the Contract.  *Fenimore v. Stauder*, 527 P.2d 943, 945 (Colo. App. 1974) (where a contract contains ambiguities, its terms are "to be construed against the drafter" of the contract).  Applying such construction, the Court should interpret clause 12 of the Contract to be a Colorado forum-selection clause and transfer this case to Colorado pursuant to 28 U.S.C. § 1404(a).

## CONCLUSION

In light of the foregoing, the Court should dismiss the Complaint and provide such further relief as is just and proper, including awarding Pharmatech its reasonable attorney fees pursuant to C.R.S. § 13-17-201.  *See Gognat v. Ellsworth*, 224 P.3d 1039, 1054-55 (Colo. App. 2009), *aff'd*, 259 P.3d 497 (Colo. 2011) (affirming award of fees under statute for nonresident's successful dismissal of action for lack of personal jurisdiction and holding that request for fees does not constitute consent to jurisdiction); *Crow v. Penrose-St. Francis Healthcare Sys.*, 262 P.3d 991, 997 (Colo. App. 2011) (fee-shifting statute applies where breach of contract claims are dismissed along with tort claims).  Alternatively, and in the event the Court declines to dismiss the Complaint and/or the individual claims

therein, the Court should order Plaintiff to provide a more definite statement with respect to its fourth claim for relief and  transfer venue to the District of Colorado.

Respectfully submitted September 2, 2014.


/s Maritza Dominguez Braswell

Maritza Dominguez Braswell
NJ Attorney ID: 016222008
Jones & Keller, P.C.
1999 Broadway, Suite 3150
Denver, CO 80202
(303) 573-1600
mbraswell@joneskeller.com


Attorney for Defendant Pharmatech, Inc.